```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

WEST COAST ROOFING & WATERPROOFING,
INC., on behalf of itself and a
class of persons similarly situated,

vs.                               Case No. 2:06-cv-118-FtM-29DNF

JOHNS MANVILLE, INC., JOHNS MANVILLE
INTERNATIONAL, INC., BRIDESTONE
AMERICAS HOLDING, INC., GAF
MATERIALS CORPORATION, and VARIOUS
JOHN DOES 1-1000,

    Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants' various dispositive motions (Docs. #57-59). Defendant GAF Materials Corporation also filed a Request for Oral Argument on June 15, 2006. (Doc. #60.) Plaintiff filed a Response to each motion on July 24, 2006. (Docs. #71-73.) Finding that the parties have fully briefed the Court on the issues, the Court concludes that oral argument is unnecessary and will deny defendant's request.

**I.**

In the First Amended Complaint (Doc. #46), plaintiff West Coast Roofing & Waterproofing, Inc. (West Coast Roofing or plaintiff) alleges that defendants Bridgestone Americas Holding, Inc. (Bridgestone) and GAF Materials Corporation (GAF) manufactured

and sold components of roofing systems to consumers and roofing contractors through various distributors, including defendants John Does 1-1000. Plaintiff further alleges that defendants Johns Manville, Inc. and Johns Manville International, Inc. (collectively, Johns Manville) manufactured the rigid board insulation used in these roofing systems, which consists of a tapered perlite material.

In marketing their products, Bridgestone, GAF, and Johns Manville advertised and published specifications for the joint use and installation of the roofing systems. These defendants further represented that the products would withstand uplift pressures generated by various wind speeds, and that the products complied with testing protocols and building codes of each state where the products were installed. Plaintiff asserts that it relied on these intentional misrepresentations when plaintiff purchased a roofing system for a recent roofing project called Riva. The installed roofing system at Riva failed the tests which were conducted in accordance with the Florida Building Code.

On May 26, 2006, plaintiff filed an eight-count class action First Amended Complaint alleging various state and federal claims. These claims are as follows: (1) fraud in the inducement against Bridgestone and GAF (Count I); (2) common law fraud (Count II); (3) negligent misrepresentation (Count III); (4) violation of Florida Building Code § 553.84 and like building codes and statutes throughout the country (Count IV); (5) violation of the Florida

Unfair and Deceptive Trade Practices Act, FLA. STAT. § 501.201, *et seq.*, (FDUPTA) (Count V); (6) violation of similar unfair and deceptive trade practices acts throughout the country (Count VI); (7) civil conspiracy (Count VII); and (8) violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, (RICO) (Count VIII). Counts II through VIII are alleged against all defendants. Additional facts are set forth below as needed.

Bridgestone, GAF, and Johns Manville move to dismiss the First Amended Complaint on five theories: (a) the Florida economic loss rule bars Counts I through III; (b) plaintiff fails to plead with requisite specificity under Rule 9(b) of the Federal Rules of Civil Procedure as to Counts I through VI; (c) plaintiff fails to state a claim as to Counts II through VIII; (d) plaintiff lacks standing as to Count VI; and (e) no recovery for consequential damages is allowed under Counts I through VII.

**II.**

**A. Florida Economic Loss Rule**

In their motions to dismiss, defendants contend that Florida's economic loss rule bars plaintiff's claims under Counts I through III. Specifically, defendants assert that plaintiff entered into contracts with them when plaintiff purchased their products, and that plaintiff suffered damage to only the product itself. Defendants further argue that the fraud counts arise from alleged

intentional misrepresentations related to the performance of the contracts. Consequently, defendants assert Florida's economic loss rule bars plaintiff from bringing these tort claims for economic injuries arising from a breach of contract.

"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indemnity Ins. Co. of North Am. v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). See also Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994). In the context of contractual privity, the economic loss rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." American Aviation, 892 So. 2d at 536. One of the recognized exceptions, however, permits a tort action where the tort was committed independently of the contract breach. American Aviation, 892 So. 2d at 537, 543.

"The Florida Supreme Court has announced that 'by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action.'" D&M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. 4th DCA 2003)(quoting Moransais v. Heathman, 744 So. 2d 973, 983 (Fla. 1999)). Thus, "the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation." Id. "The test to determine if

the economic loss rule applies is to ask if the fraud alleged is in an act of performance or in a term of the bargain." Id. (citing Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th DCA 2000)). "[W]hen the fraud 'relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies.'"  Id.  However, "when the 'fraud occurs in the connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." Id. at 487-88.

Applying Florida's economic loss rule, the Court finds that Counts I and II are not barred. The Florida Supreme Court clearly exempted tort claims based on fraudulent inducement from the economic loss rule. While Count II is labeled as a common law fraud claim, its allegations are virtually identical to Count I except that Count II is directed against all defendants. Count III alleges negligent misrepresentation, and such a claim is also exempted from the economic loss rule. None of the counts can reasonably be interpreted to relate to the performance of the contracts, and no such claim will be allowed under these counts. The Motion is denied as to Counts I, II, and III.

**B. Pleading Specificity Under Rule 9(b)**

Defendants argue that all of plaintiff's fraud based claims (Counts I through VI and Count VIII) should be dismissed for failure to plead with particularity as required by Rule 9(b) of the

Federal Rules of Civil Procedure. Plaintiff responds that this requirement must be read in the light of the liberal federal notice pleading requirement, which requires only "a short plain statement," Fed. R. Civ. P. 8(a), and that the counts are adequately plead under this standard. The Court agrees with defendants as to all counts except Count IV, which is not a fraud-based claim.

Under the notice pleading standards, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)(quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)). Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) does not abrogate the concept of notice pleading. Rather, "[i]n a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006).

"Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud,

specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." United States v. McInteer, ___ F.3d ___, No. 04-16167, 2006 WL 3461441, *3 (11th Cir. Dec. 1, 2006). Rule 9(b) requires a complaint to set forth (1) precisely what statements or omissions were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)(citation omitted); Garfield, 466 F.3d at 1262. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted.) "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 28 F.3d 1008, 1012 (11th Cir. 2005).

The Court finds that plaintiff has not satisfied the requirements of Rule 9(b). The alleged false statements are properly identified: (1) that the products, when used as recommended by the defendants, would withstand the uplift pressures generated by various wind speeds, including hurricanes, as required by each jurisdiction (Doc. #46, ¶23, 24); and (2) that defendants have tested the built-up roofing system in accordance with the test protocols of each state and that the systems meet all applicable

building codes and, particularly, all applicable wind codes. (Doc. #46, ¶ 25.)  It is alleged that these representations are false because the built-up roofing systems do not meet their stated windload capacities and the tapered perlite insulation fails, tearing apart at as little as one-third the represented capacity and well below building code requirements.  (Doc. #46, ¶ 30.)

The other Rule 9(b) requirements are not satisfied.  While plaintiff alleges defendants "repeatedly" made such representation through varying communication mediums, the First Amended Complaint lacks any assertions relating to the time these alleged misrepresentations were made.  See Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005)(finding plaintiff's vague allegations that improper practices took place everywhere [defendant] does business throughout the statutory time period[]" as insufficient to satisfy Rule 9(b)).  Additionally, other than referring to "Defendants," there is no indication which defendant made which representations.  A RICO claim based on alleged fraudulent statements must be plead with particularity in accordance with Rule 9(b), Brooks, 116 F.3d at 1380-81, and the fraud allegations of Count VII fail to comply with the Rule 9(b) standards. The Court concludes that plaintiff failed to provide the requisite specificity for its fraud-based claims in Counts I, II, III, V, VI, VII, and VIII.

**C.  Count IV, Building Code Violations**

Count IV essentially alleges fifty-one separate causes of action: a statutory cause of action for violation of the Florida

Building Code and violations other unspecified "building code and statutes to protect consumers against the negligent, defective and improper design, installation and construction of property" in the other states and District of Columbia. (Doc. #46, ¶ 64.)  As it relates to the non-Florida claim, the count does not even satisfy the notice pleading requirement.  While Rule 8(a) requires only a short and plain statement, plaintiff's vague references to similar statutory provisions and/or codes in the other forty-nine states falls far short of the adequate pleading notice requirement.  Neither defendants nor the Court should be required to guess at the identity of the applicable statutory claims.  Except as to the claim for a violation of the Florida Building Code, Count IV is dismissed.

**D.  Count VII, Civil Conspiracy**

Defendants argue that Count VII fails to state a civil conspiracy claim.  To allege a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts under the conspiracy."  Lipsig v. Ramlawi, 760 So. 2d 170, 180 (Fla. 3d DCA 2000)(citing Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).  In addition, "an actionable conspiracy requires an actionable underlying tort."  Raimi, 702 So. 2d at 1284.

The Court finds that plaintiff adequately stated a claim for civil conspiracy based on the underlying claim alleging defendants' violation of the Florida Building Code.  Plaintiff identifies the actionable underlying torts as defendants' violation of building codes relating to roofing material and defendants' conduct in engaging in unfair and deceptive trade practices.  The Court, however, has dismissed these underlying claims (except as they relate to the Florida Building Code).[1]  Under Florida law, "a civil conspiracy claim is not an independent cause of action. . . ." Behrman v. Allstate Life Ins. Co., 178 Fed. Appx. 862, 863 (11th Cir. 2006).  Consequently, the Court concludes that the motions to dismiss as to Count VII is due to be granted in part because the predicate claims (alleged violations of the non-Florida building codes and alleged violations of the unfair and deceptive trade practices statutes) have been dismissed.  The motions as to Count VII is otherwise denied.

The Court will allow plaintiff to file a Second Amended Complaint to cure the deficiencies described herein if plaintiff is able to do so.[2]

Accordingly, it is now

---

[1] See discussion *supra* Part II.B.

[2] Having dismissed the counts on other grounds, the Court declines to consider Bridgestone's argument that the parties' contract bars recovery of consequential damages. For purposes of the motions to dismiss, the Court did not consider the attached copy of the purported contract between Bridgestone and plaintiff.

**ORDERED AND ADJUDGED:**

1.   Defendants John Manville, Inc.'s and Johns Manville International, Inc.'s Dispositive Motion to Dismiss First Amended Complaint (Doc. #57) is **GRANTED IN PART AND DENIED IN PART.**

2.   Defendant GAF Materials Corporation's Dispositive Motion to Dismiss the First Amended Complaint, or, in the Alternative, for More Definite Statement (Doc. #58) **GRANTED IN PART AND DENIED IN PART.**  The Court denies as moot the Motion for More Definite Statement (Doc. #58).

3.   Defendant Bridgestone Americas Holding Inc.'s Dispositive Motion to Dismiss the First Amended Complaint (Doc. #59) is **GRANTED IN PART AND DENIED IN PART.**

4.   Defendant GAF Materials Corporation's Request for Oral Argument is **DENIED.**

5.   The First Amended Complaint is dismissed without prejudice against all defendants except as to the Florida statutory claim in Count IV.

6.   Plaintiff shall have **TWENTY (20) DAYS** from the date of this Opinion and Order to file a second amended complaint.  If a second amended complaint is not filed, defendants shall answer that

-11-

portion of the First Amended Complaint which has not been dismissed within **THIRTY (30) DAYS** of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this   29th   day of December, 2006.

                                             JOHN E. STEELE
                                             United States District Judge

Copies:
Counsel of record